## Richmond

John G. Crisman, Committee, &c. v. Osmar Swanson, Et Al.

January 21, 1952.

Record No. 3857.

Present, All the Justices.

The opinion states the case.

*J. Randolph Larrick, J. Frederick Larrick* and *Harrison, Benham & Thoma,* for the appellant.

*James P. Reardon, J. Sloan Kuykendall, Henry H. Whiting, Denny, Valentine & Davenport* and *W. E. Edwards,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

John I. Sloat died March 22, 1949, without issue, leaving a will dated December 23, 1948, which was duly probated and which provided as follows:

"First, I leave my property, both real and personal, in trust for my wife Maggie Olivia Sloat, and appoint the Commercial and Savings Bank, Winchester, Va., as my executor, with broad powers of investment, re-investment, sale or otherwise, in order that my wife may be cared for comfortably.

"At her death if any of the corpus remains, I desire the following disposition of the same made;"

He then gave his house to named devisees and sums of money to named legatees, including the employees of Commercial and Savings Bank, followed by the provision that if the corpus of his estate was inadequate, then each beneficiary was to share pro rata. Any remaining fund was to go to the trustees of the Virginia Childrens Home Society and the Methodist Orphanage, at Richmond.

On April 28, 1949, little more than a month after his death, his wife, Maggie Olivia Sloat, was adjudged incompetent and her brother was appointed committee. The committee brought this suit to have the will construed. The bank and some of the other defendants filed answers. The case was heard on the bill and answers. It was averred in the answer of the bank that at the time the will was made the testator knew that his wife's mental condition was very bad.

The committee, plaintiff below and appellant here, contended that the will gave the wife an equitable fee in the real estate and an absolute estate in the personal property under the rule of *May* v. *Joynes,* 20 Gratt. (61 Va.) 692, and that the gifts over were void.

The defendants contended that the will created a trust for the comfortable care of the wife during her life and that the gifts over were valid.

The court, in a written opinion, held that *May* v. *Joynes, supra,* did not apply; that neither the wife nor the trustee was granted the absolute and uncontrolled power of disposition; that the will created in the trustee a discretionary power to dispose of the corpus for the purpose only of caring for the wife comfortably during her lifetime; and that if any part of the corpus was not consumed for that purpose during the lifetime of the wife, it would vest in the remaindermen according to the terms of the will. The accuracy of this statement in the first paragraph of the court's opinion is beyond question:

"In this case the intention of the testator is perfectly clear. His wife was incompetent and he desired his property to be used to provide for her comfortable support and maintenance during her lifetime, even to the extent of disposing of any part or all of the corpus if it should be necessary for such purpose. In the event that any part of the corpus remained undisposed of at her death he intended it to go to the remaindermen named in the will."

The court then added the well-settled principle that "His intention should, of course, be carried out unless it violates some rule of law."

This purpose of the testator violates no rule of law unless the effect of the language of the will is to give the wife an equitable fee simple estate in the property devised. If so, the gifts over are void for repugnancy, because a gift of the fee is a gift of the whole, and when the whole is given to one person there is nothing left to be given to another. "The remainder over is void, not because the court does not perceive the testator's intent, but because the attempted gift violates a fundamental rule or canon of property that after a donee has been given a fee in property, such fee cannot be qualified or limited by a gift over to another of such portion of the property as the donee may not have consumed or disposed of." *Mowery* v. *Coffman,* 185 Va. 491, 495, 39 S. E. (2d) 285, 287.

But before there is any repugnancy, it must appear from the will that a fee simple was in fact given to the first taker. If expressly given, there is no problem. But it may be given by implication, and that again is a question of intention, to be ascertained from the language of the will, read in the light of the circumstances existing when it was executed. *Rule* v. *First Nat. Bank,* 182 Va. 227, 28 S. E. (2d) 709.

It has long been settled in Virginia that where a life estate is given to the first taker, but with full and unlimited power of disposition of the property given, the implication is conclusive that the fee is given, because the absolute power of disposition is the eminent quality of absolute property. *Burwell* v. *Anderson,* 3 Leigh (30 Va.) 348, 355-6; *May* v. *Joynes, supra; Smith* v. *Smith,* 122 Va. 341, 94 S. E. 777; *Mowery* v. *Coffman, supra.*

But to have that effect the power of disposition must be without limitation or restriction as to time, mode or purpose of its exercise. *Taylor* v. *Taylor,* 176 Va. 413, 424, 11 S. E. (2d) 587, 591; *Honaker Sons* v. *Duff,* 101 Va. 675, 683, 44 S. E. 900; *Smith* v. *Smith, supra,* 122 Va. at p. 355, 94 S. E. at p. 780.

The doctrine of *May* v. *Joynes, supra,* was abolished by chapter 146, Acts 1908, page 187 (*Southworth* v. *Sullivan,* 162 Va. 325, 173 S. E. 524), which act was in turn modified by section 5147 of the 1919 Code, now section 55-7 of the 1950 Code, but the statute applies only to estates expressly granted for life and does not control in this case. *Mowery* v. *Coffman, supra,* 185 Va. at p. 495, 39 S. E. (2d) at p. 287, and cases there cited.

There are many decisions involving the kind of estate given to the first taker by the particular wills there construed. As stated in *Honaker Sons* v. *Duff, supra,* and repeated in *Davis* v. *Kendall,* 130 Va. 175, 196, 107 S. E. 751, 757, "The cases are difficult to reconcile, save on the principle of giving free play to the testator's intention. That intention is the master key."

In the case of *Shermer* v. *Shermer,* 1 Wash. (1 Va.) 266, 272, 1 Am. Dec. 460, decided more than a century and a half ago, Judge Edmund Pendleton, the first President of this court, said: "I have generally observed that adjudged cases have more frequently been produced to disappoint, than to illustrate the intention; and I am free to own, that where a testator's intention is apparent to me, cases must be strong, uniform, and apply pointedly, before they will prevail to frustrate that intention."

Judge Burks expressed the same thought in *Conrad* v. *Conrad,* 123 Va. 711, 715, 97 S. E. 336, in saying that little aid comes from prior decisions. " 'It is not enough that the same words in substance, or even literally, have been construed in other cases. It often happens that the same identical words require different constructions, according to the context and the peculiar circumstances of each case.' "

In *Davis* v. *Kendall, supra,* 130 Va. at p. 181, 107 S. E. at p. 752, the will gave to the testator's wife all of his estate "for her sole use and benefit so long as she lives, * * and at her death to be disposed of as she may think proper, and deem best." It was held that the wife took a life estate with power of appointment and not a fee simple because "She lacks that full power of disposition by 'both deed and will, without limitation, or restriction, as to time, mode, or purpose, of its exercise,' which, in the contemplation of the cases following *May* v. *Joynes,* serves to enlarge a life estate expressly given into a fee by implication." 130 Va. at p. 211, 107 S. E. at p. 763.

In that case Judge Saunders reviewed most of the authorities from *May* v. *Joynes, supra,* to the date of the opinion, including these relied on by and most nearly in point for the appellant: *Hall* v. *Palmer,* 87 Va. 354, 12 S. E. 618, 24 Am. St. Rep. 653, 11 L. R. A. 610; *Farish* v. *Wayman,* 91 Va. 430, 21 S. E. 810; *Brown* v. *Strother,* 102 Va. 145, 47 S. E. 236; *Hawley* v. *Watkins,* 109 Va. 122, 63 S. E. 560; *Rolley* v. *Rolley,* 109 Va. 449, 63 S. E. 988, 21 L. R. A. (N. S.) 64; and *Conrad* v. *Conrad, supra,* 123 Va. 711, 97 S. E. 336. The opinion states that the court fully concurs in the pronouncement in the *Conrad Case* that when a person is given an absolute dominion over property, "whether the estate be legal or equitable," this constitutes a gift of the property itself, and a gift over of " 'what remains at her death,' " or " 'such part as she may not appropriate' or the like is void;" and that "Hence, in each case it is important to determine whether absolute dominion has been afforded. The intent of the testator on the whole, if it can be ascertained, will aid in this determination. Unlimited power to use the estate for support and maintenance is plainly intended in many of the cases cited, * *." 130 Va. at p. 192, 107 S. E. at p. 756.

The court then said that the facts in the cases cited afforded the reasons for the conclusions reached and that "In many of these cases the fee is given expressly, or by necessary implication, for the stated purpose of providing for the support and maintenance of the first taker. In other cases the fee is given directly or by implication, though the purpose thereof is not stated; but the fee, in terms or by necessary implication, is lodged in the first taker without restrictions, and may be simply and readily used by him for support, *or for any other purpose.*" 130 Va. at pp. 195-6, 107 S. E. at p. 757. (Emphasis added).

██ We agree with the trial court that the Sloat will did not give either to Mrs. Sloat or to her trustee absolute and uncontrolled power of disposition without limitation as to time, mode, or purpose of its exercise.

Appellant says in his brief that the words of the will "are probably sufficient to create a trust and name the bank trustee. But they certainly do not cut down the dominion over the estate already given Mrs. Sloat, except to make it an equitable fee instead of a legal fee."

The will in terms leaves nothing directly to Mrs. Sloat and gives her dominion over nothing. On the contrary, it leaves all the testator's property "in trust for my wife," and appoints the bank executor, "with broad powers of investment, re-investment, sale or otherwise." There can be no doubt that the bank was to execute the trust, whether it be called executor or trustee in doing so. The trust is imposed in the bank, and along with it the broad powers described, "in order that my wife may be cared for comfortably."

Appellant says in his brief that the question comes down to this issue: In whom does the will vest the power of alienation, and in whom the discretion to expend the corpus of the residuary trust for the comfortable care of Mrs. Sloat? If in Mrs. Sloat, he says, she has an absolute equitable fee; if in the trustee bank, the trial court's ruling was right.

It is difficult to discern in the language of the will any suggestion that the testator intended to vest in his wife the power of alienation. That power was expressly given to the trustee by the language conferring upon it the broad powers to invest, re-invest, sell or otherwise. If the wife had the power of alienation, the absolute dominion over the property devised to the trustee, she could immediately take charge of the property, render the trust inoperative and completely frustrate the whole plan and purpose expressed in the will.

The trust so created and the broad powers so given to the trustee to control and deal with the property are stated to be for the specific purpose "that my wife may be cared for comfortably." That was his primary concern. That was the reason why he created the trust. He knew that his wife's mental condition was bad. If he had thought she was capable of taking care of the property and of herself, it would have been simple for him to have given it directly to her. Because he did not

think so, he gave it to the trustee for her, with broad powers to control and manage it, to make sure she would· be cared for comfortably. From the plan and purpose of the will as evidenced by its terms, we think the necessary implication is that upon the trustee selected and appointed by the testator was imposed the duty and obligation to manage and apply the property so that his wife would have all that was needed for her comfortable care.

She would need that care only, of course, so long as she lived. During her life the trustee could use the property only for the purpose and within the limits of the trust upon which it was given; that is, for the comfortable care of the wife. The purpose to which it could apply it was thus limited. For faithlessness to its trust, it would be accountable before a court of equity to those injured. *Patterson* v. *Old Dominion Trust Co.,* 139 Va. 246, 257, 123 S. E. 549, 552; 54 Am. Jur., Trusts, § 276, p. 219.

We are unable to see any intention, expressed in the will or to be implied from its language, to vest in the widow a fee simple estate. We cannot read in this will the unlimited and unqualified power of disposition in the *cestui que trust* which the court found to be implied and to create a fee simple in *Farish* v. *Wayman, Hawley* v. *Watkins, Brown* v. *Strother, Conrad* v. *Conrad, supra,* and the other cases relied on by appellant. In those cases the court apparently considered that only "the naked legal title" was in the trustee, as in *Davis* v. *Heppert,* 96 Va. 775, 777, 32 S. E. 467, 468. So to construe this will would completely destroy the testator's whole plan and purpose. The purpose of the will clearly was to put the property in the hands of the trustee for the use described during Mrs. Sloat's life, and then, if anything was left in the hands of the trustee at her death, it was to be turned over to the remaindermen, those of secondary importance in the plan of the testator.

We can see nothing illegal in that plan, nor do we think any rule of law will be violated by carrying out what the testator plainly intended should be done. *Cf. Lee* v. *Law,* 1 Va. Dec. 808, 19 S. E. 255.

On petition of Mrs. Sloat's committee, the appellant, the court entered an order on August 2, 1950, allowing the petitioner one month from the date of the final decree construing the will for renunciation on behalf of his ward. The appellant assigns

as error the refusal of the court to provide in the decree of November 3, 1950, appealed from, that the one month period should run from the date of the order of this court.

Section 64-15 of the Code of 1950 provides that in a suit by the surviving consort for construction of the will, the court shall upon application provide by order that the surviving consort be allowed not exceeding one month for renunciation "after final decree has been entered in the suit construing the will." We hold this to mean that in the case of appeal, the one month period for renunciation is to run from the date of the final decree of this court. *Cf. Simmons* v. *Simmons,* 177 Va. 629, 15 S. E. (2d) 43. The order of August 2, 1950, is to be so construed. We express no opinion upon the right of the committee or his ward to make the renunciation.

The decree appealed from is

*Affirmed.*